**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RANDELL HICKS,**

                              Plaintiff,               3:14-cv-72
                                                            (GLS)

                    v.

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                              Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Legal Services of Central New York | CHRISTOPHER CADIN, ESQ. |
| 472 South Salina Street | |
| Suite 300 | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | AMANDA J. LOCKSHIN |
| United States Attorney | JASON P. PECK |
| 100 South Clinton Street | Special Assistant U.S. Attorneys |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Randell Hicks challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Hicks' arguments, the Commissioner's decision is reversed and remanded.

### II. Background

On October 7, 2008, Hicks filed an application for SSI under the Social Security Act ("the Act"), alleging disability since October 7, 2008. (Tr.[1] at 95, 256-59.) After his application was denied, (*id.* at 114-17), Hicks requested a hearing before an Administrative Law Judge (ALJ), which was held on November 18, 2010, (*id.* at 72-93, 118-20). On November 30, 2010, the ALJ issued a partially favorable decision finding Hicks disabled from October 7, 2008 through January 31, 2010, but denying benefits thereafter. (*Id.* at 96-108.) The ALJ concluded that a medical improvement occurred as of February 1, 2010 and that Hicks was no longer disabled.

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

(*Id.* at 105.)  At Hicks' request, the Social Security Administration Appeals Council remanded the case back to the ALJ to, among other things, obtain evidence from a medical expert to clarify the nature and severity of Hicks' mental impairments as well as the opinion of a vocational expert (VE) to clarify the effect of the assessed limitations on Hicks' occupational base. (*Id.* at 109-13.)  After a second administrative hearing, the ALJ again held that Hicks' disability ended as of February 1, 2010.  (*Id.* at 10-28, 39-64.) That decision became the final decision of the Commissioner when the Appeals Council denied Hicks' request for review.  (*Id*. at 1-7.)

Hicks commenced the present action by filing his complaint on January 23, 2014 wherein he sought review of the Commissioner's determination.  (Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 8, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 11, 15.)

### III.  <u>Contentions</u>

Hicks contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 11 at 13-24.) Specifically, Hicks claims that: (1) the hypothetical posed to the VE was inconsistent with the ALJ's residual functional capacity (RFC)

3

determination; and (2) the ALJ's evaluation of the medical and vocational evidence is not supported by substantial evidence. (*Id.* at 12-14.)[2] The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 15 at 6-13.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 3-9; Dkt. No. 15 at 2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

---

[2] Hicks' second and third points are repetitive and will not be addressed separately. (Dkt. No. 11 at 14-24.)

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

4

## VI. **Discussion**

### A. **Medical Improvement**

Among other arguments, Hicks contends that the ALJ erred in weighing the opinion evidence of record, which supports his allegations that his disability continued after February 1, 2010. (Dkt. No. 11 at 14-20, 22-24.) Because the ALJ's decision fails to clearly explain the weight given to the opinions of treating physician Noumana Hameed, the court agrees that remand is appropriate here.

Under the Act, "if the Commissioner finds that an individual is no longer disabled, [his] benefits may be terminated." *Matice v. Comm'r of Soc. Sec.*, No. 6:99-CV-1834, 2004 WL 437472, at *3 (N.D.N.Y. Feb.11, 2004); *see* 42 U.S.C. § 1382c(a)(4). Termination of benefits can only occur "if there is substantial evidence demonstrating a 'medical improvement' which enables the individual to engage in substantial gainful activity." *Matice*, 2004 WL 437472, at *3 (quoting 42 U.S.C. § 1382c(a)(4)). "Medical improvement" means "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i). "A determination that there has

been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.*[4]

Here, the ALJ found that from October 7, 2008 through January 31, 2010, Hicks' bipolar disorder met listing 12.04.[5] (Tr. at 18-19.) In making this determination, the ALJ relied, in part, on the April 2009 opinion of consulting examiner Nathan Hare that Hicks had a marked limitation in his ability to maintain social functioning and concentration, persistence, and pace. (*Id.* at 18-19, 424-32.) The ALJ afforded less weight to the January 2009 opinion of non-examining psychological consultant E. Kamin that

---

[4] The regulations set forth a seven step sequential analysis to determine whether a claimant's disability continues. *See* 20 C.F.R. § 416.994(b)(5). Although "this analysis is employed most commonly at subsequent 'continuing disability review' proceedings [s]everal circuits . . . hold that it is also appropriate for initial-application determinations resulting in benefits awards for closed periods." *Deronde v. Astrue*, Civil Action No. 7:11-998, 2013 WL 869489, at *2 (N.D.N.Y. Feb. 11, 2013) (collecting cases). While the Second Circuit has not directly addressed this issue, district courts in the Second Circuit have held that the seven-step analysis is appropriately utilized when the ALJ must decide whether to award the claimant benefits for a finite, or closed period. *See DeJesus v. Comm'r of Soc. Sec.*, No. 13-cv-2251, 2014 WL 5040874, at *11-12 (S.D.N.Y. Sept. 29, 2014); *Deronde*, 2013 WL 869489 at *2; *Carbone*, No. 08-CV-2376, 2010 WL 3398960, at *13 (E.D.N.Y. Aug. 26, 2010); *Chavis*, No. 5:07-CV-0018, 2010 WL 624039 at *6 (N.D.N.Y. Feb. 18, 2010); *Abrams v. Astrue*, No. 06-CV-0689-JTC, 2008 WL 4239996, at *2 (W.D.N.Y. Sept. 12, 2008).

[5] Listing 12.04 pertains to affective disorders, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. *See* 20 C.F.R. pt. 404, subpart P, app. 1, § 12.04. To meet this listing, as relevant here, a claimant must show they have bipolar syndrome resulting in "at least two of the following: 1. [m]arked restriction of activities of daily living; or 2. [m]arked difficulties in maintaining social functioning; or 3. [m]arked difficulties in maintaining concentration, persistence, or pace; or 4. [r]epeated episodes of decompensation, each of extended duration." *Id.* § 12.04(A)-(B).

Hicks suffered mild limitations in social functioning and moderate limitations in concentration persistence and pace. (*Id.* at 18.) However, according to the ALJ, Hicks' treatment notes indicate that, as of February 1, 2010, he experienced a medical improvement. (*Id.* at 19.) The ALJ concluded that, beginning in February 2010, Hicks suffered only moderate limitations in social functioning and concentration, persistence, and pace. (*Id.* at 19-20.) In determining that Hicks experienced a medical improvement as of February1, 2010, the ALJ gave little weight to the December 2010 report of consultative examiner Mary Ann Moore,[6] and "some other reports" because they "exaggerate certain features of subjective complaining" or involve limitations arising from old drug and alcohol abuse patterns, even though Hicks is no longer abusing such substances. (*Id.* at 19.) The ALJ did not explicitly weigh any other opinions with respect to Hicks' mental impairments. She concluded that, since February 1, 2010, Hicks had the

---

[6] Dr. Moore diagnosed Hicks with bipolar disorder, post-traumatic stress disorder, panic disorder, generalized anxiety disorder, learning disorder, mild mental retardation, and personality disorder. (Tr. at 485.) In her opinion, Hicks was "very limited" in his ability to perform complex tasks, attend to a routine and maintain a schedule, maintain basic hygiene, and use public transportation. (*Id.* at 485-86.) Dr. Moore concluded that Hicks was permanently disabled due to continued impulsivity, anger issues with severe depression, anxiety, and psychosis, as well as intellectual deficits and verbal skill problems. (*Id.* at 487.) In evaluating Dr. Moore's report, the ALJ noted that no other medical source had diagnosed Hicks with mild mental retardation or noted limitations in his grooming and hygiene. (*Id.* at 22-23.)

RFC[7] to perform a full range of work at all exertional levels, limited to one or two-step tasks, which do not require complex decision making, supervising others, negotiation or confrontation with others, or frequent communication with others. (*Id.* at 20.)

A review of the administrative record reveals that Hicks received treatment at United Health Services Outpatient Mental Health Clinic from licensed clinical social worker Lisa Castetter as well as Dr. Hameed. (*Id.* at 450-72, 488, 499-528, 536-38, 540-44, 550-52, 556-58, 562-68, 573-77, 580-89, 595-97, 599-617, 619-29, 635-86, 696.) In September 2010, Castetter and Dr. Hameed co-signed a letter to the Broome County Department of Social Services (DSS) reporting that, due to his bipolar disorder and post-traumatic stress disorder, Hicks continued to be hypervigilent and paranoid, suffered violent nightmares, and elicited a "dysregulated emotional response" to any loud noise. (*Id.* at 488.) Accordingly, they opined that it would be "inappropriate and possibly dangerous for [Hicks] to work in a setting which requires interaction with

---

[7] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

others." (*Id.*) Thereafter, in September 2011, Castetter completed a Medical Assessment form for the Broome County DSS and opined that Hicks was capable of no work activity due to emotional and mental health issues. (*Id.* at 499.) At that time, by way of letter to the DSS, Castetter explained that Hicks had difficulty managing his mood swings and was susceptible to sudden and unpredictable outbursts of anger, particularly when around people he did not know. (*Id.* at 500.) Castetter recommended that Hicks only perform work within his home. (*Id.*) Subsequently, in July 2012, Castetter and Dr. Hameed co-signed a letter to Hicks' counsel reaffirming their belief that it would be inappropriate and unsafe for Hicks to work in a setting which required interaction with others, and, therefore, they recommended that he work only from home. (*Id.* at 696.)[8]

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

---

[8] The July 2012 letter cosigned by Castetter and Dr. Hameed mirrors the language in Castetter's September 2011 letter. (*Compare* Tr. at 500, *with id.* at 696.)

is not inconsistent with the other substantial evidence."[9]  20 C.F.R. § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 416.927(c)(2)-(6).  The ALJ must provide "'good reasons' for the weight given to the treating source's opinion."  *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted).  "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability."  *Id*. (internal quotation marks and citation omitted).

In this case, it appears that the ALJ overlooked Dr. Hameed's opinions.  The ALJ explicitly noted, but did not explicitly weigh, Castetter's

---

[9] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

10

September 2011 opinion indicating that is was inappropriate and unsafe for Hicks to perform work that requires interaction with others. (Tr. at 17.) She also noted Hicks' Global Assessment of Functioning (GAF)[10] score at the time, contained in Hicks' United Health Services treatment records, which indicated moderate symptoms. (*Id.* at 17, 501.) In addition, the ALJ observed that Dr. Hameed "would not come right out and say that [Hicks] cannot work at all, and, above all, would not make any significant statement in regard to mental retardation or any cognitive problems, but only focused on the emotional deficits." (*Id.* at 21.) Further, she considered Dr. Hameed's treatment notes, which reflect that Hicks experienced improvement in his symptoms beginning in February 2010 and contain largely benign mental status examinations. (*Id.* at 17-18; *see generally id.* at 450-72, 505-28, 599-600, 608-12, 664-66, 673-77, 680-84.)

The Commissioner argues that the ALJ did not err in failing to consider Dr. Hameed's July 2012 opinion that Hicks was unable to perform work that required interaction with others because it was duplicative of Castetter's September 2011 opinion, which the ALJ considered, and

---

[10] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).

because the ALJ considered Hicks' GAF score, which was consistent throughout the relevant period. (Dkt. No. 15 at 11.) Nevertheless, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have h[is] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). Because there is, at minimum, a reasonable basis to doubt that the ALJ applied the proper legal standard in assessing Dr. Hameed's opinions, denial of disability cannot be premised on satisfaction of the substantial evidence standard. While the need for agency reconsideration gives way "where application of the correct legal principles to the record could lead to only one conclusion," *id.* at 986, the record here compels no such singular outcome, because the opinion of a treating licensed social worker is not entitled to controlling weight under the regulations. *See* 20 C.F.R. § 416.913(a), (d); SSR 06–03p, 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006). Thus, as the court cannot definitively discern whether the ALJ was aware of the medical opinions co-signed by Dr. Hameed, remand is required here.

Further, if the ALJ was aware of Dr. Hameed's opinions, she should have clearly explained the weight she afforded them. *See* 20 C.F.R. § 416.927(c)(2). Although the ALJ explained that she discounted Dr. Moore's opinion because it was inconsistent with the diagnoses and treatment notes of Dr. Hameed and Castetter,[11] the ALJ did not clearly explain her reasons for discounting the opinion of Dr. Hameed and Castetter that Hicks was unable to interact with others appropriately. (Tr. at 15-22.) While Hicks' treatment notes indicate that he experienced progress in all of his treatment goals, including decreasing his anger intensity and frequency, they also reflect that he avoids contact with most people and continues to suffer anxiety. (*Id.* at 540-44, 550-52, 562-68, 573-77, 580-89, 595-97, 613-17, 619-25, 627-29, 635-63, 667-27, 678-79, 685-86.) Moreover, Castetter and Drs. Hameed and Moore—the only medical sources to provide opinions to the ALJ with respect to Hicks' mental impairments after February 1, 2010—each asserted that Hicks suffered serious limitations in his ability to interact with others. (*Id.* at 485-

---

[11] The court notes that the ALJ's explanation that she did not adopt Dr. Moore's opinion that Hicks was very limited in his ability to use public transportation because it was not "confirmed" elsewhere in the record is contradicted by the opinions of Dr. Hameed and Castetter that Hicks is incapable of interacting appropriately with others, as well as frequent references in his treatment notes that, due to his anxiety, Hicks avoids contact with others, especially strangers. (Tr. at 23, 469, 595, 643, 650, 652, 660, 669, 685, 696.)

13

88, 500, 696.)

Turning to Hicks' physical impairments, the court agrees with the Commissioner that his own testimony contradicted the opinion of consultative examiner Justine Magurno that Hicks was markedly limited in his ability to walk, lift, carry, and squat, and moderately limited in his ability to stand and bend. (Dkt. No. 15 at 12-13; Tr. at 379-84.) In particular, at his initial administrative hearing in November 2010, Hicks' counsel indicated that his claim was based primarily on psychiatric impairments, as opposed to physical impairments. (Tr. at 77-78.) In addition, Hicks testified that he walked ten blocks to the hearing, regularly cooks and cleans his house, and rakes and mows his lawn. (*Id.* at 86.) Subsequently, at the May 22, 2012 hearing, Hicks reaffirmed that he regularly cooks, cleans, mows the lawn, as well as walks to the grocery store, and rides his bicycle to appointments. (*Id.* at 47, 49.) Thus, the ALJ's decision to afford the opinion of Dr. Magurno "no evidentiary weight," is supported by substantial evidence. (*Id.* at 21.)

B.  **Remaining Findings and Conclusions**

Because Hicks' remaining contentions may be impacted by the subsequent proceedings directed by this Order, it would be premature of

14

the court to address them at this juncture.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 5, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court